THOMAS DOUGHERTY, Respondent, v. GEORGE CHAPMAN, Appellant.

Kansas City Court of Appeals, February 6, 1888.

1. CONTRACT OF BAILMENT—BAILOR AND BAILEE AS TO TITLE—RULE CONCERNING.—A bailee cannot avail himself of the title of a third person (though the person be the true owner) for the purpose of keeping the property for himself, nor in any case where he has not yielded to the paramount title. The position of the bailee is the same, whether his bailor was honestly mistaken as to the rights of the third person, whose title is set up, or fraudulently acting in derogation of them.

2. CONVERSION—WAIVER OF TORT AND SUING IN ASSUMPSIT—MEASURE OF DAMAGES.—In a case of conversion, where the plaintiff waives the tort and sues *in assumpsit*, the right to the proceeds of the converted property accrues by force and at the moment of election. Not being entitled to the proceeds of the sale until he makes the election, he is not entitled to interest prior thereto. Section 2723 has no application to such a case. But the institution of suit is a sufficient demand, and interest begins to run from that time. (But in this case the error is cured by *remittitur* as to the interest).

APPEAL from Chariton Circuit Court, HON. G. D. BURGESS, Judge.

*Reversed and remanded, with directions.*

Statement of case by the court.

This case, which was begun June 2, 1883, was tried on the third count of the petition, the other counts having been dismissed. The third count of the petition

was as follows : "Plaintiff further states that defendant owes him the sum of three hundred dollars for cash received by defendant on the sale of a jack, which was the property of plaintiff, which said jack was sold, and the proceeds derived therefrom received by defendant and appropriated to his own use and benefit ; for which plaintiff asks judgment, together with six per cent. interest thereon from August, 1881, the date of said sale, until paid."

The answer was a general denial.

At the trial, plaintiff offered evidence tending to show that, in 1879, he (plaintiff), as administrator of the estate of one Robt. White, deceased, sold the jack in controversy at public auction, and, by a previous arrangement, bid him in for defendant, Chapman ; that the sale was for cash, and the defendant, having no money, refused to take the jack as his own, but agreed to let Dougherty have the jack at his bid, and that he (Chapman) would then take the jack down to his farm, and, after paying expenses, that he and Dougherty would divide profits arising from the animal's services ; that plaintiff consented to this arrangement, and that defendant took the jack accordingly, and afterwards sold it. Plaintiff also offered evidence, against defendant's objection, for the purpose of showing the value of the jack. At the close of plaintiff's case, defendant interposed a demurrer to the evidence, which was refused.

The defendant, in substance, testified that he authorized the plaintiff to purchase the jack for him at the administrator's sale, and that he was notified of the purchase by plaintiff for sixty-five dollars. As to what then occurred, the defendant testified as follows : "I told him (plaintiff) the jack was cheap enough at that. He was owing me a large sum of money at that time. I told him I would give him credit on his account for the sixty-five dollars bid for the jack, and he replied that it was all right. He wanted me to send and get the jack that night, but I waited until next morning, and then sent and got the jack from Mrs. White's stable, in

Keytesville, and sent him down to my farm. I gave Dougherty credit on his account for the sixty-five dollars, as agreed." The defendant also testified that he sold the jack, in 1881, to a man in Linn county for two hundred dollars.

For the plaintiff the court gave the following instructions :

"1. If the jury believe, from the evidence, that, in the year 1879, Thomas Dougherty, as administrator of the estate of Robert White, deceased, sold at public sale, as the property of said estate, the jack in question in this case, and that, by an agreement between plaintiff and defendant, said jack at said sale was bid off for, and in the name of, defendant, and that, subsequently, by a further agreement between plaintiff and defendant, the plaintiff was to pay the purchase price for said jack at said sale, and the same was to become plaintiff's property ; and that plaintiff did account to said estate for said bid at said sale, and that, thereafter, in the year 1881, while said jack was the property of plaintiff, the defendant sold said jack without plaintiff's consent or authority, then the jury should find for plaintiff the value of the jack at the time when sold by defendant, with interest on such sum at the rate of six per cent. per annum from that date."

"3. Even if the jury should believe, from the evidence, that plaintiff was indebted to defendant at the time the jack was sold at administrator's sale, and thereafter, and that defendant credited plaintiff's account with the amount at which the jack was sold at said sale, yet the jury cannot find for the defendant on that ground, unless the jury further find, from the evidence, that plaintiff was indebted to defendant at the time, and authorized such credit to be made."

Of its own motion the court gave the following instructions :

"1. Unless the jury believe, from the evidence, that plaintiff had the jack sued for bid in for defendant at the administrator's sale, and that defendant refused to

take him, and that thereafter he and plaintiff entered into an agreement, by the terms of which agreement defendant was to keep the jack as plaintiff's property, and that he afterwards sold and converted him to his own use, they will find for defendant."

"2. If the jury find, from the evidence, that, by an agreement between plaintiff and defendant, plaintiff had the jack bid in for defendant at the administrator's sale, and afterwards delivered him to defendant, and that, by an agreement between them, the amount of the bid for the jack was credited upon an account which defendant then held against the plaintiff, they will find for defendant."

The case was tried on the fifth day of January, 1887, and the jury, under the instructions and evidence, returned a verdict in favor of the plaintiff in the sum of $261.16⅔. On the seventh day of January, a motion for new trial was filed, which having been overruled, the defendant appealed to this court.

CRAWLEY & SON, for the appellant.

I. The action was for cash received by defendant to plaintiff's use. Evidence as to value was immaterial and should have been excluded. 2 Greenl. Evid. (13 Ed.) secs. 98, 117; Bliss on Code Pleading, sec. 13.

II. The demurrer to plaintiff's evidence should have been sustained. (a) According to plaintiff's testimony defendant refused to accept the jack under his bid, or comply with the conditions of the public sale, which was for cash. This left the ownership, the property, in the administrator, as administrator. *Dannefelser v. Weigle*, 27 Mo. 45. After refusing to receive the property, upon the terms of the public sale, defendant had nothing to transfer. His agreement to let plaintiff have the animal was no more than giving his consent to a *devastavit*. (b) Plaintiff's own evidence further negatives his right to recover by affirmatively showing a wrongful speculation with the property of the estate, and defendant's knowledge of the character in which it

was held. Plaintiff's judgment, therefore, in this action, would afford defendant no bar against a second recovery upon the same demand at the suit of the proper parties. Bigelow on Fraud, 257 and note, 380, 381; 1 Perry on Trusts (2 Ed.) sec. 225; Dicey on Parties (Truman's Ed.) top p. 439, side p. 421; *McLaurine v. Monroe*, 30 Mo. 462; *Renshaw v. Wills*, 38 Mo. 201; *Dusky v. Rudder*, 80 Mo. 401; *State ex rel. v. Berning*, 74 Mo. 87; *Cowgill v. Linville*, 20 Mo. App. 138; *Landis v. Saxton*, 89 Mo. 375.

III.   All three instructions asked on part of plaintiff should have been refused. ( *a* ) Plaintiff's first instruction presents an issue outside of the pleadings. In case of wrongful conversion of personal property the injured party has his election to sue in trover for the value, or waive the tort and sue for money had and received to his use. The petition here is an express waiver of the tort and ratification of the sale. Where the proceeds are demanded the question of value is immaterial and should not be submitted to the jury. Bliss on Code Pleading, sec. 13; 2 Greenl. Evid. (13 Ed.) p. 98, sec. 117; Cooley on Torts, 92. And interest could only be recovered after demand made for the money. Of such demand there was no proof. ( *b* ) Plaintiff's second instruction was misleading and unwarranted by the evidence. His own testimony establishes title in the estate, and not in himself, and defendant's knowledge thereof. The doctrine that a bailee may not set up the *jus tertii* against his bailor, has no application; first, because Dougherty, as administrator, was the real bailor, as shown by himself; and, second, because a party is never estopped to assert the legal effect of the pleadings or evidence of his adversary. *State ex rel. v. Berning*, 74 Mo. 87; *Estes v. Long*, 71 Mo. 605. The fact that Dougherty, years afterward, accounted to the estate for sixty-five dollars, the amount of defendant's bid, does not alter the case. Such an accounting, to operate as a transfer of the property from the estate to the administrator, must have been made under such circumstances

·as to protect defendant from a second recovery founded ·on the same demand. *Lyons v. Doherty*, 50 Mo. 38. ( *c* ) Plaintiff's third instruction is partially unintelligi-ble and wholly wrong. The proposition is too obvious to justify citation of authority, that if the animal in con-troversy was delivered to defendant as defendant's property, plaintiff cannot recover in this action, whether the property has ever been paid for, or credit given on ·the account, or not.

IV. Both instructions given by the court, of its ·own motion, were erroneous. ( *a* ) The first presents as ·a fact essential to plaintiff's recovery, the very fact ·which, if found by the jury, should have defeated his recovery, viz., " that defendant refused to take the jack under his bid." Such refusal left the property in the estate. ( *b* ) Delivery of the property to defendant under his bid as his own property was a complete defence to this action. The second instruction, given on the court's own motion, requires, in addition, that the jury find an agreement to credit, as well as an actual credit, on the account. This was error.

A. W. Mullins, for the respondent.

I. There are two material and controlling questions presented by the record in this case: ( 1 ) The title to the jack and whether or not the defendant can be heard to question the plaintiff's ownership. ( 2 ) Plaintiff's ·title being established, whether or not the judgment is in excess of the amount to which he was entitled. The defendant having received the jack from the plaintiff under the contract between them, as testified to by plain-tiff, which the verdict of the jury found to be true, the defendant is estopp ed and precluded, after having sold the jack and obtained the money for him, and the owner-ship never having been controverted by any third party, from now denying the plaintiff's ownership and title. *Pulliam v. Burlingame*, 81 Mo. 111 ; *Matheny v. Mason*, 73 Mo. 677 ; *Morrison v. Edgar*, 16 Mo. 411 ; *McGriffin v. Baird*, 62 N. Y. 329 ; *McKay v. Draper*, 27 N. Y.

256; Bigelow on Estoppel (3 Ed.) 430, 431; Story on Bailments (6 Ed.) sec. 450 ; 2 Story's Eq. Jur. (7 Ed.) sec. 817.

II. The record discloses that the jury found for plaintiff the amount the defendant himself testified he realized in cash for the jack, adding thereto interest at six per cent. from the time of the sale and receipt of the money by defendant up to the trial. If error was committed in so computing and finding the amount to which plaintiff was entitled, it was in defendant's favor, not against him. The plaintiff was entitled to interest at six per cent. per annum from the time the defendant sold the jack up to the trial. 1 Rev. Stat., sec. 2126, p. 351; *Watson v. Harmon*, 85 Mo. 447; *Walker v. Borland*, 21 Mo. 289; *State to use v. Smith*, 31 Mo. 566; *Parrott v. Ice Co.*, 46 N. Y. 369 ; 1 Sutherland on Damages, 173, 174.

III. For the reasons already stated it is unimportant in the disposal of this appeal whether or not the evidence admitted with respect to the value of the jack should have been received or rejected. But no objection was made to the admission of that evidence sufficient for the court here to consider the point now presented by appellant's counsel. The only objection made in the court below was that the evidence was immaterial. *Margrave v. Aussmus*, 51 Mo. 561, and cases cited.

IV. The question of the ownership of the property was submitted to the jury, under the instructions given by the court, very favorably for the defendant. The evidence was conflicting, but the jury believed the plaintiff and discredited the defendant, and therein lies his real alleged grievance in this appeal. And whether the plaintiff's first instruction with respect to the measure of damages is incorrect or not, as a rule of law, the jury were not misled thereby. Appellate courts will not reverse for such error not materially affecting the merits of the action, and where no wrong result was reached. Rev. Stat., sec. 3775 ; Laws 1885, p. 115 ; *Noble v. Blount*, 77 Mo. 235 ; *Alexander v. Railroad*, 19 Mo. App. 312 ;

*Morris v. Railroad*, 79 Mo. 367; *Orth v. Dorsch-lein*, 32 Mo. 366; *Blewett v. Railroad*, 72 Mo. 583; *Haskings v. Railroad*, 58 Mo. 302 ; *Swearengen v. Orne*, 8 Mo. 207; *Hunter v. Miller*, 36 Mo. 143; *Filley v. McHenry*, 84 Mo. 277 ; s. c., 12 Mo. App. 581.

V.   It thus appears that the controversy is narrowed down to the sole question ( with respect to the merits of the case ), whether or not the jury, under the instructions of the court, did right in allowing interest in favor of the plaintiff on the amount of money defendant had received on the sale of plaintiff's property which the defendant had theretofore unlawfully converted to his use and benefit.   Interest was clearly allowable under section 2126, Revised Statutes, 1879, and also under section 2723, Revised Statutes, and that the form of the action does not affect the right of the plaintiff to recover interest.   In the section of the statute last referred to, it is provided that interest shall be allowed "for money recovered for the use of another, and retained without the owner's knowledge of the receipt"; and in the former section of the statute ( sec. 2126 ), the jury can allow interest in all cases of unlawful seizure or conversion of goods.

VI.   But if this court should be of opinion that, under the form of action in this case, interest could not have been allowed, until after the action was commenced, the plaintiff here offers to remit all the interest included prior to that time, such *remittitur* to take effect from the date of the trial in the court below.

## I.

HALL, J.—Under the facts hypothetically stated in the first instruction given for the plaintiff, and the first instruction given by the court of its own motion, to prove which the evidence tended, the defendant was the bailee of plaintiff in the latter's individual, and not in his representative, capacity.   The instructions suppose an agreement by which the jack became the property of *plaintiff*, and by which the defendant was to keep the

jack as plaintiff's property. Under the instructions, the jury could not have found for plaintiff without finding such agreement. If the defendant had possession of the jack as the *plaintiff's* bailee, and converted the same to his own use, under the facts of this case, he was liable therefor to the plaintiff, whether the latter was the owner of the jack in fact or not. As between the plaintiff and defendant, the jack was the plaintiff's. The rule is, "A bailee cannot avail himself of the title of a third person (though the person be the true owner) for the purpose of keeping the property for himself; nor in any case where he has not yielded to the paramount title." *The Idaho case*, 93 U. S. 575; *Pullham v. Burlingame*, 81 Mo. 119; *Cole v. Railroad*, 21 Mo. App. 449. In this case no third person had set up any claim to the jack, and the defendant could not avail himself of the title of the real owner, for the purpose of keeping the jack for himself, no matter where the real title belonged, in the estate of which the plaintiff was the administrator, or elsewhere. The rule is not based upon the honest, though mistaken, belief of the bailor in his title, but is founded upon the relation existing between the bailor and bailee; and "the position of the bailee is precisely the same, whether his bailor was honestly mistaken as to the rights of the third person whose title is set up, or fraudulently acting in derogation of them." *The Idaho case, supra.*

## II.

This was not an action for conversion, but was an action *in assumpsit* for money had and received. The defendant had converted the plaintiff's jack to his own use by selling the same, and had received the proceeds of the sale in money. The plaintiff waived the tort and brought this suit *in assumpsit* for the money thus received by the defendant with interest from the date of the sale. The value of the jack was, therefore, irrelevant, and evidence thereof was incompetent. For the

same reason, the instruction given as to the measure of the damages was erroneous. But, since the jury, as their verdict, returned the amount received by the defendant from such sale, with interest at six per cent. per annum from the date of the sale, the error was immaterial in its results, if, in so doing, the jury acted in accordance with the correct rule as to the measure of damages. The question is, therefore, was said sum with interest from said date the correct measure of plaintiff's damages ?

The plaintiff's right to waive the tort and sue *in assumpsit* for the proceeds of the sale was authorized by an implied promise, raised by law, on the part of the defendant, that he would pay the money to the plaintiff. This right of election on the part of the plaintiff rests upon the fiction imposed at his pleasure upon the misconduct of the defendant. By electing to waive the tort, the plaintiff became entitled to the proceeds of the sale, but up to that time he was not entitled to such proceeds. The right to the proceeds accrued by force, and at the moment, of the election, and not before. As the plaintiff was not entitled to the proceeds of the sale until he made the election, as a matter of course he was not entitled to interest thereon prior thereto. This conclusion is not in conflict with section 2723, Revised Statutes, which provides that "Creditors shall be allowed to receive interest at the rate of six per cent. per annum * * * for money recovered for the use of another, and retained without the owner's knowledge of the receipt." This statute has to do with a case where money is *in fact* recovered for the use of another, and has nothing to do with a case like this, where the *gravamen* of the transaction sounds in tort and there is no debt in fact, but only by fiction of law. That fiction will not be so indulged as "to bring a case within the terms of the statute which otherwise would not include it." *Finley v. Bryson*, 84 Mo. 670. In this case there was no election until suit was brought. Hence the plaintiff had no right to interest until then. The institution of the

suit was a sufficient demand. Under our statute, the failure of a prior demand is not available to a party unless it is expressly set up by way of defence, etc., accompanied with a tender of the amount due. Rev. Stat., sec. 1018. Interest began to run from the institution of suit.

### III.

For the error indicated the judgment would have to be reversed and the case remanded for a new trial, were it not for a *remittitur* offered by the plaintiff. In view of the possibility that we should entertain the opinion as to the measure of damages expressed by us, the plaintiff, by his counsel, has offered to enter a *remittitur* in the sum of $18.06$\frac{2}{3}$, to take effect on January 5, 1887, the date of the judgment, which reduces the judgment to the sum of $243.10, two hundred dollars principal, and interest thereon at six per cent. per annum from June 2, 1883, the date of the institution of the suit, to the date of the judgment. This is the sum for which the judgment should have been rendered in the first place, and the *remittitur* will be allowed. The costs of this appeal are, however, adjudged against the plaintiff, and judgment will be entered here accordingly.

The judgment of the circuit court is reversed and the cause remanded, with directions to said court to enter judgment as of January 5, 1887, in favor of plaintiff for the sum of $243.10. All concur.